## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## NORTHERN DIVISION

| | | |
|---|---|---|
| JEFFREY PAUL BRYANT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:25-CV-00033 JMB |
| | ) | |
| RUSTY RATLIFF, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court upon the motion of self-represented plaintiff Jeffrey Bryant, an inmate at Southeast Correctional Center (SECC), for leave to commence this action without payment of the required filing fee. [ECF No. 2]. For the reasons stated below, the Court finds that the plaintiff does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $1.00. *See* 28 U.S.C. § 1915(b)(1). Furthermore, based upon a review of the complaint, the Court finds that the complaint should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

### Initial Partial Filing Fee

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has not submitted a *certified* prison account statement. As a result, the Court will require plaintiff to pay an initial partial filing fee of $1.00. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (when a prisoner is unable to provide the Court with a certified copy of his prison account statement, the Court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances."). If plaintiff is unable to pay the initial partial filing fee, he must submit a copy of his prison account statement in support of his claim.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating the court must accept factual allegations in the complaint as true but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a self-represented complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal

- 2 -

construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a self-represented complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

### The Complaint

Plaintiff Jeffrey Bryant, an inmate at SECC, brings this prisoner civil rights claim under 42 U.S.C. § 1983 against five named defendants and five John Doe defendants for alleged civil rights violations that allegedly occurred during his incarceration at Moberly Correctional Center (MCC) in Moberly, Missouri. The five named defendants in this action are: Warden Rusty Ratliff, Correctional Officer Unknown Davee; Correctional Officer J. Morrison; Medical Provider Jermey Unknown; and Nurse Jane Huff. Plaintiff sues the five named defendants in their official capacities only.

Plaintiff alleges that during his incarceration at MCC on or about April 5, 2024, a Code 16 (possible seizure) was called on the radio system. *Plaintiff admits that due to his medical condition at the time, he does not recall the events in question*; however, he states that there is video evidence which the Court can obtain from MCC.

Plaintiff claims that officers responded to his location and placed him in mechanical restraints. He identifies one of the officers who responded as Officer Unknown Davee. He does not, however, indicate what Officer Davee is accused of doing. He also fails to indicate who placed him in restraints and if this occurred immediately after he was found.

Plaintiff has attached various grievance documents to his complaint, which the Court takes notice of pursuant to Federal Rule of Civil Procedure 10(c).[1] In the Warden's Response, dated June 13, 2024, the response notes that plaintiff claimed that at the time of the incident he had "slurred incoherent speech and glassy and vacant eyes. . ."  It is unclear if plaintiff was having a medical emergency or if he had ingested a substance of some kind or what the Missouri Department of Corrections' (MDOC) officials believed had occurred at the time of the incident. It appears, however, that the MDOC officials treated the event as an overdose.

After plaintiff was placed in restraints, an altercation occurred between plaintiff and several MDOC officials. The Institutional Resolution Responses, Grievance Appeal Responses and Warden Responses plaintiff has attached to his complaint make reference to an assault *by plaintiff on Correctional Officer Morrison* during an attempt by MDOC officials to escort him to medical. Plaintiff, however, alleges in his complaint that "shortly after submitting to restraints, [he] was peper [sic] sprayed" by Officer Morrison. Plaintiff fails to provide facts relative to how or why this occurred, stating only that he had on mechanical restraints when this occurred. This incongruence in the facts is buttressed by plaintiff's statement in the damages section of the complaint. Plaintiff states that after the altercation on April 5, 2024, he had abrasions to his face and bruising on his face, chest and wrists. Thus, it is clear that either before the restraints were on

[1]Pursuant to Rule 10(c), "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."

or afterwards, there was an altercation between plaintiff and some of the correctional officers at MCC.

Plaintiff then purports that while still undergoing a seizure, but apparently walking under mechanical restraints, he was escorted to MCC's medical facility. He claims that Nurse Jermey Unknown evaluated him and provided the "OK" for application of the WRAP,[2] and that a spit mask was also placed over his face. Plaintiff asserts that the pepper spray was not wiped off his face even though he was evaluated prior to being placed in the WRAP by Nurse Jermey. He does not, however, indicate when the pepper spray was washed away from his face that day.

Plaintiff was then transported to a solitary confinement camera cell. Plaintiff estimates he was in the WRAP for approximately 4 hours, and afterwards, he was stripped of his clothing and kept for 48 hours under a special security order in the camera cell. He asserts that he was not provided either a blanket or a mat during those 48 hours. Plaintiff does not indicate if he was on suicide watch during this time.

Nurse Jermey evaluated plaintiff after the WRAP was removed, and it appears Nurse Jane was there during the evaluation. Plaintiff does not indicate what Nurse Jane did other than observe. Given that plaintiff alleges in his complaint that he does not recall the events in question, the Court is unsure of when plaintiff's memory of events started again, i.e., was it after the WRAP was removed or later.

Approximately a week after the events, he saw the Adjustment Board regarding Institutional Violations that had occurred on April 5, 2024. He was charged with an assault on staff, presumably J. Morrison, as well as being under the influence. Plaintiff claims his urinalysis, however, came back negative. Nonetheless, he was found guilty of the violations and given two

---

[2]A WRAP restraint device is a temporary restraining device used to immobilize a person's body and restrict their movement by reducing the possibility of injury.

consecutive thirty-day sentences in the restrictive housing unit and his C-Score was raised. Plaintiff was then transferred to SECC. Plaintiff states that he has been in segregation since that time. He does not indicate if he has been given other violations in addition to the aforementioned. Plaintiff believes unnamed persons retaliated against him by losing some of his property after he was moved to segregation.

Plaintiff seeks 200 million in damages for pain and suffering.

## Discussion

Based on a careful review and liberal construction of the filings before the Court, the Court will dismiss this action pursuant to 28 U.S.C. § 1915(e)(2)(B).

### A. Official Capacity Claims

#### 1. Against the MDOC Defendants – Rusty Ratliff, Unknown Davee and J. Morrison

A suit brought against a state official in his or her official capacity pursuant to § 1983 is not a suit against the official, but rather a suit against the official's office. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989). In other words, the real party in interest in an official-capacity suit is not the named official, but the governmental entity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). *See also Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent"); and *Kelly v. City of Omaha, Neb.,* 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official . . . capacities sues only the public employer"). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will*, 491 U.S. at 71. *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (stating that a "suit for damages against a state official in his official capacity is a suit against the State, and the State is not a person under § 1983"). Moreover, in the absence of a waiver, the

Eleventh Amendment bars suit against a state official acting in his or her official capacity. *Morstad v. Dep't of Corr. & Rehab.,* 147 F.3d 741, 744 (8th Cir. 1998).

Here, plaintiff alleges that defendants Rusty Ratliff, Unknown Davee and J. Morrison are employees at Moberly Correctional Center (MCC) in Moberly, Missouri. MCC is part of the Missouri Department of Corrections, which is a state agency of the State of Missouri. As noted above, plaintiff's official capacity claims against defendants are really claims against defendants' employer – the State of Missouri. Such claims are barred because a state is not a "person" for purposes of § 1983, and because the Eleventh Amendment bars suits against state officials acting in their official capacity. Defendants Rusty Ratliff, Unknown Davee and J. Morrison are therefore subject to dismissal.

### 2. Official Capacity Claims Against the Centurion Defendants – Jermey Unknown and Jane Huff

Centurion Health is the private corporation contracted to provide medical services to prisoners at MCC. To prevail on an official capacity claim against the employees of Centurion, plaintiff must establish the liability of Centurion, itself, for the alleged conduct. *See Marsh v. Phelps Cty.,* 902 F.3d 745, 751 (8th Cir. 2018); *Kelly v. City of Omaha, Neb.,* 813 F.3d 1070, 1075 (8th Cir. 2016). To demonstrate such liability, plaintiff must show that the constitutional violation resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *See Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018).

The instant complaint contains no allegations that either Davee's or Huff's alleged violations of plaintiff's constitutional rights were the result of an official Centurion policy, an unofficial Centurion custom, or a failure by Centurion to train or supervise its employees. Such allegations are necessary to state an official capacity claim. *See Ulrich v. Pope Cty.,* 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that

caused the alleged deprivation of plaintiff's rights). Therefore, plaintiff's official capacity claims against Davee and Huff must be dismissed for failure to state a claim.

## B. Individual Capacity Claims

Even if plaintiff had brought claims against defendants in their individual capacities, his claims would be subject to dismissal.

### 1. Lack of Personal Involvement

Plaintiff lists several defendants in this lawsuit, but he fails to causally connect each defendant to an alleged civil rights violation. The Court will address each of the defendants in turn. Plaintiff first lists five John Doe individuals as defendants whom he fails to make allegations against. Plaintiff's failure to allege that these defendants engaged in conduct that deprived him of a federally-protected right is fatal to his claims against them. *See Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints"); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003) (affirming dismissal of pro se complaint against defendants who were merely listed as defendants in the caption and there were no allegations of constitutional harm against them). Thus, the claims against John Does 1-5 are subject to dismissal.

Similarly, plaintiff has not stated a claim against Warden Rusty Ratliff, because vicarious liability is inapplicable to § 1983 suits. *Marsh v. Phelps Cty.*, 902 F.3d 745, 754 (8th Cir. 2018). "Government officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015) (internal citations omitted); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (to be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of

- 8 -

his constitutional rights). "[A] supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). *See also Morris v. Cradduck*, 954 F.3d 1055, 1060 (8th Cir. 2020) ("To state a claim against a supervisor, a plaintiff must show that the supervising official, through his own individual actions, violated the Constitution"). To succeed, "[t]he plaintiff must demonstrate that the supervisor was deliberately indifferent to or tacitly authorized the offending acts," which "requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996). Furthermore, to maintain an action for training or supervisory liability, the plaintiff must show that the failure to train or supervise caused the injury. *Moore v. City of Desloge, Mo.,* 647 F.3d 841, 849 (8th Cir. 2011). Plaintiff has not alleged that Warden Ratliff failed to train or supervise the defendants in this action. Thus, he has not adequately plead an action against defendant Ratliff for § 1983 liability.

Plaintiff has also failed to properly allege that defendant Davee engaged in conduct that deprived him of a federally-protected right. He asserts that defendant Davee responded to the Code 16, but he does not assert that Davee did anything to violate his rights. Similarly, the Centurion employees, Jermey Unknown and Jane Huff, were not alleged to have violated plaintiff's rights. Plaintiff asserts that Jermey Unknown checked him over and said he was ok to be placed in a WRAP, as well as evaluated him after he was taken out of the WRAP. But plaintiff has not alleged that either of the Centurion employees were deliberately indifferent to his serious medical needs.[3] Therefore, the complaint fails to state a valid § 1983 claim against them.

---

[3]For example, plaintiff has not alleged that he was suffering from a serious medical need at the time he saw either Jermey Unknown or Jane Huff and that they failed to address that need when he or another called the medical issue to their attention. Whether a prison official has been "deliberately indifferent

## 2. Excessive Force

As noted above, plaintiff has brought this action against defendant J. Morrison in his official capacity only. However, even if plaintiff had brought this action against defendant Morrison in his individual capacity for a claim of excessive force, his claim would be subject to dismissal, as he has not provided enough allegations in his complaint to survive initial review on this claim.

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs,* 436 U.S. 658, 685 (1978). One such federally protected right is the Eighth Amendment's prohibition on cruel and unusual punishment which limits the conditions in which a state may confine convicted criminals. *Robinson v. California*, 370 U.S. 660 (1962); *Rhodes v. Chapman*, 452 U.S. 337 (1981). The Supreme Court has explained this limit as a prohibition on punishments that "involve the unnecessary and wanton infliction of pain" including those that are "totally without penological justification." *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173, 183 (1976)); *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986).

"[Correctional] Officers may reasonably use force in a good-faith effort to maintain or restore discipline but may not apply force maliciously and sadistically to cause harm." *Johnson v. Blaukat*, 453 F.3d 1108, 1112 (8th Cir. 2006) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)) (internal quotation marks omitted). "Because the use of force is sometimes required in prison

---

requires both an objective and a subjective analysis." *Hall v. Ramsey Cty.,* 801 F.3d 912, 920 (8th Cir. 2015). Under the objective prong, the plaintiff must establish that he suffered from an objectively serious medical need, while under the subjective prong, he or she must show that a prison official actually knew of but disregarded that serious medical need. *See Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014). To meet the objective component of this standard, the complaint must plead facts sufficient to demonstrate that the plaintiff suffered from an objectively serious medical need, meaning one that has been diagnosed by a physician as requiring treatment or that is so obvious even a layperson would recognize the need for a doctor. *See Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). A plaintiff attempting to claim deliberate indifference must establish both the objective and subjective components. *See Thompson v. King,* 730 F.3d 742, 746 (8th Cir. 2013).

settings, guards are liable only if they are completely unjustified in using force, *i.e.,* they are using it maliciously and sadistically." *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008) (citing *Hudson*, 503 U.S. at 9). The test for reasonableness or the good-faith application of force depends on the following:

> whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury.

*Treats v. Morgan*, 308 F.3d 868, 872 (8th Cir. 2002) (citing *Hudson*, 503 U.S. at 7). *See also Hickey v. Reeder,* 12 F.3d 754, 759 (8th Cir. 1993) ("There is no question that prison officials may compel compliance with legitimate prison regulations.); *Stenzel v. Ellis,* 916 F.2d 423, 426 (8th Cir. 1990) (holding that inmate's refusal to comply with a legitimate jail security regulation constitutes a disturbance that poses a security risk to the safety of inmates and prison staff).

Plaintiff's purported allegations of force are muddled, and he admits that *he does not recall the events in question* on April 5, 2024. Further, as noted above, the Institutional Resolution Responses, Grievance Appeal Responses and Warden Responses plaintiff has attached to his complaint make reference to an assault *by plaintiff* on Correctional Officer Morrison during an attempt by MDOC officials to escort him. And plaintiff states in the damages section of the complaint that he had abrasions to his face and bruising on his face, chest and wrists. Thus, it is clear that either before the restraints were on or afterwards, there was an altercation between plaintiff and some of the correctional officers at MCC. What is unclear, however, is if plaintiff was pepper sprayed in an attempt to maintain or restore discipline or for another reason.

However, based on the allegations of the complaint, where plaintiff simply states that he was pepper sprayed by Morrison when he was under restraints, plaintiff has not plead enough facts for the Court to find Morrison's actions to be an unreasonable use of force. *See Peterson v. Heinen*, 89 F.4th 628, 636 (8th Cir. 2023) (finding no excessive force where correctional officer used

chemical spray on a hand-cuffed prisoner who was cursing, threatening, and spitting at officers); *Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000) (holding that "a limited application of [chemical spray] to control a recalcitrant inmate constitutes a tempered response by prison officials when compared to other forms of force" (cleaned up)); *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984) (holding that the use of mace, tear gas, or other similar chemical agents does not constitute cruel and unusual punishment when reasonably necessary to subdue a recalcitrant prisoner, even where the prisoner is locked in his cell or in handcuffs). For this reason, plaintiff's allegations of excessive force against Morrison are subject to dismissal.

### 3. Retaliation Claims Under the Eighth Amendment

Plaintiff alleges that his property was missing after he was placed in segregation. Plaintiff, however, fails to indicate how his property came up missing, or which of the defendants he blames for the missing property. This claim is also subject to dismissal.

### 4. Due Process Violation Claims

Last, plaintiff claims that he was given two conduct violations and sentenced to two thirty-day terms in segregation and his C-score was raised. He has not indicated, however, how his time in segregation differed from his time in the general population.

In the administrative segregation context, the determination of whether prison officials denied an inmate due process involves a two-step inquiry. *Williams v. Hobbs*, 662 F.3d 994, 1000 (8th Cir. 2011). First, a plaintiff must demonstrate that he or she was deprived of life, liberty, or property by government action. *Phillips v. Norris*, 320 F.3d 844, 846 (8th Cir. 2003). *See also Beaulieu v. Ludeman*, 690 F.3d 1017, 1047 (8th Cir. 2012) (stating that a court "need reach the question of what process is due only if the inmates establish a constitutionally protected liberty interest"); and *Singleton v. Cecil*, 155 F.3d 983, 987 (8th Cir. 1998) (explaining that to claim a due process violation, plaintiff has to be deprived of either life, liberty, or property, otherwise "it does

not matter whether one has received due process or not"). Once it has been established that a liberty interest exists, the process necessary to protect that interest must be determined. *Williams*, 662 F.3d at 1000.

As life or property is not at issue in this case, plaintiff must identify a liberty interest to sustain a due process claim. *See Phillips*, 320 F.3d at 847. The United States Supreme Court has determined that prisoners have a protected liberty interest in avoiding conditions of confinement that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). As such, to assert a due process violation based on a liberty interest of avoiding administrative segregation, "an inmate must show that the segregation created an atypical and significant hardship on him in relation to the ordinary incidents of prison life to demonstrate that his liberty interest was curtailed." *Rahman X v. Morgan*, 300 F.3d 970, 973 (8th Cir. 2002).

The Eighth Circuit has stated that an assignment to disciplinary or administrative segregation is not, in and of itself, an atypical and significant hardship. *See Portley-El v. Brill*, 288 F.3d 1063, 1065 (8th Cir. 2002) (stating that Eighth Circuit has "consistently held that administrative and disciplinary segregation are not atypical and significant hardships under *Sandin*"); *Kennedy v. Blankenship*, 100 F.3d 640, 642 (8th Cir. 1996) (stating that plaintiff's "demotion from administrative segregation to punitive isolation is not the sort of deprivation that qualifies as atypical and significant"); and *Wycoff v. Nichols*, 94 F.3d 1187, 1190 (8th Cir. 1996) (stating that plaintiff "has no liberty interest in avoiding administrative segregation unless the conditions of his confinement present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest"). This is so even if the demotion to segregation is without cause. *Phillips*, 320 F.3d at 847.

- 13 -

Similarly, the time plaintiff alleges he has spent in segregation does not, by itself, rise to the level of a due process violation. *See Kennedy*, 100 F.3d at 641-42 (stating that plaintiff's thirty days in punitive isolation was not atypical and significant); *Orr v. Larkins*, 610 F.3d 1032, 1033-34 (8th Cir. 2010) (stating that nine months in administrative segregation did not constitute an atypical and significant hardship). As such, plaintiff's due process claims are subject to dismissal.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [ECF No. 2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $1.00 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that an appeal of this Order would not be taken in good faith.

An Order of Dismissal will accompany this Memorandum and Order.

Dated this 12th day of August, 2025.

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE